IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TOMMIE JEAN SHANKS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:18-cv-00505-JB-MU |
| | ) |
| GLOBE METALLURGICAL, INC., *et al.*, | ) |
| | ) PUBLISH |
| Defendants. | ) |

## ORDER

This matter is before the Court on the Magistrate Judge's Report and Recommendation (Doc. 30), and Defendant A & G's Objection (Doc. 31). After *de novo* review of the record, and the benefit of oral argument on May 17, 2019, this Court **REMANDS** the action.

## BACKGROUND

Stephen Jamar Shanks was injured in a job-related accident on April 24, 2018 while working for Globe Metallurgical, Inc., ("Globe") in Dallas County, Alabama. (Doc. 15, p. 3). On May 4, 2018, Plaintiffs Tommie Jean and Willie Lee Shanks, in their individual capacities and as "next to [*sic*] friend(s)" of Stephen Jamar Shanks, sued Globe and several Fictitious Defendants. (Doc. 1-7, pp. 1 – 13). In their Original Complaint, Plaintiffs brought these claims against Globe and those Fictitious Defendants:

1) Worker's Compensation Benefits and Medical Expenses against Globe to which Stephen or his dependents are entitled;
2) Removal of Safety Devices against Fictitious Defendants A and B;
3) Removal of Safety Devices against Fictitious Defendants A and B;
4) Alabama Extended Manufacture Liability Doctrine against Fictitious Defendants C – H;
5) Failure to Worn [*sic*] / Negligence against Fictitious Defendants;

6) Negligence / Failure to Warn or Guard against Fictitious Defendants C – H; and
7) Loss of Consortium against all Defendants.[1]

(Doc. 1-7, pp. 5 – 12). Stephen Shanks died on May 6, 2018, due to his injuries.

After Stephen's death, Plaintiffs filed their First Amended Complaint ( "FAC") in the Dallas County Circuit Court. (Doc. 1-7, pp. 191 – 204). In the FAC, Plaintiffs added Erica Acoff "both individually as a dependent of Stephen Jamar Shanks deceased, and as a next of friend to JAMAR ACOFF, a minor child and dependent of Stephen Jamar Shanks deceased." (Doc 1-7, p. 192). In the FAC, Tommie Jean and Willie Lee Shanks remained parties in their capacities as "individual(s)" and "next to [sic] friends" of Stephen Jamar Shanks. (*Id.*). Plaintiffs also named Defendants A & G Manufacturing, Inc. ("A & G") and Yale Carolinas, Inc. ("Yale"), bringing third party tort claims against them. (Doc. 1-7, pp. 196 – 204). Last, Plaintiffs asserted claims against Fictitious Defendants 'A,' 'B,' and 'C' for the removal of safety devices. Plaintiffs identified those Fictitious Defendants:

> . . . those Alabama resident adult citizens who were co-employees of Stephen Jamar Shanks whose willful, intentional, and otherwise wrongful acts either caused or contributed to cause the injuries and damages to the Plaintiffs, all of whose true and correct names are unknown to the Plaintiffs at this time but will be substituted by amendment once ascertained . . .

(Doc. 1-7, p. 194). Plaintiffs brought these claims in their FAC:

1) A claim for worker's compensation benefits against Globe for compensation and medical care expenses;
2) Removal of Safety Devices against Fictitious Defendants A – C;
3) Removal of Safety Devices against Fictitious Defendants A – C;
4) An AEMLD claim against A & G and Yale;
5) A Dual Capacity claim against Globe;
6) A claim for Failure to Warn or Guard against A & G and Yale;

---

[1] Claims 2 through 7 do not specify whether the Plaintiffs seeking redress are Tommie Jean and Willie Lee Shanks in their individual capacities or as "next to [sic] friends."

2

7) An AEMLD claim against Fictitious Defendants D – F;
8) A Negligent Failure to Warn / Guard claim against Fictitious Defendants D – F;
9) A Negligent Failure to Inspect claim against Fictitious Defendants G – I; and
10) A Loss of Consortium Claim by Tommie Jean and Willie Lee Shanks against all Defendants. [2]

(Doc. 1-7, pp. 195 – 204).

After Plaintiffs filed their FAC, Defendant A & G, with the consent of Defendants Globe and Yale, removed this action to this Court under 28 U.S.C. §§ 1332, 1441, and 1446. In its Notice of Removal, A & G claimed this Court had diversity jurisdiction over Plaintiffs' claims against it, Yale, and Globe Manufacturing (insofar as the claims against Globe did not concern the Alabama Worker's Compensation Act). (Doc. 1, p. 2). A & G cited *Lamar v. The Home Depot,* 907 F. Supp. 2d 1311 (S.D. Ala. 2011), in which this Court held that when an action is removed on diversity grounds under 28 U.S.C. 1441(a) and the action contains non-removable claims under 28 U.S.C. 1445(c), the Court shall sever and remand the non-removable claims and maintain jurisdiction over the claims properly removed.[3]

---

[2] In Plaintiffs' FAC, it is unclear which Plaintiffs are pursuing the claims listed above, save for claim 10. In all other claims, the requests for relief are made by the Plaintiffs, generally, against the Defendants. However, Claim 10 in the FAC indicates that only Stephen's parents were pursuing a loss of consortium claim at that time. There, the paragraph immediately preceding Plaintiffs' prayer for relief is as follows: "As a proximate result of Defendant's [*sic*] conduct, Plaintiff [*sic*] Tommie Jean and Willie Lee Shanks lost the love, affection, and services of their child, Stephen Jamar Shanks." (Doc. 1-7, p. 15).

[3] *See Lamar*, 907 at 1315 (2012) (internal citations and quotations omitted):

> Section 1441(a) authorizes removal of any civil action brought in a State court of which the district courts of the United States have original jurisdiction. Section 1332(a) furnishes original jurisdiction over diversity actions with a threshold amount in controversy, so removal of a diversity action is accomplished through Section 1441(a). This case was removed based on diversity jurisdiction, and therefore removal was proper under Section 1441(a).

3

On January 2, 2019, Plaintiffs filed their Second Amended Complaint ( "SAC"), under Rule 15(a)(1) of the Federal Rules of Civil Procedure. In the SAC, Plaintiffs substituted Scott Patterson, Steve Smith and Antonio Williams – three non-diverse co-employees – for Fictitious Defendants 'A,' 'B,' and 'C'. (Doc. 15, pp. 2 – 3). In their SAC, Plaintiffs are pursuing these claims against Defendants Globe, A & G, Yale, and the newly-substituted co-employee Defendants:

1) A Worker's Compensation Claim against Globe for compensation and medical care expenses;
2) – 4)[4] Claims under AEMLD, Breach of Warranty, and Negligence against A & G and Yale
5) Claims for Removal of / Failure to Install or Maintain / By-Passing Safety Devices or Guards against co-employee Defendants; and
6) Loss of Consortium Claim by Tommie Jean and Willie Lee Shanks against all Defendants.[5]

(Doc. 15, pp. 3 – 7).

After filing their SAC, Plaintiffs filed a Motion to Remand this action to State court (Doc. 16). In their Motion, Plaintiffs argue this Court was divested of jurisdiction following the addition of non-diverse Defendants. Plaintiffs also argue even if this Court were to hold *Lamar* as the law of the District, (which it does), their addition of non-diverse parties distinguishes this action from *Lamar* and divested this Court of subject matter jurisdiction. A & G filed a response, (Doc. 24) to which Plaintiffs filed a Sur-reply. (Doc. 29).

On March 12, 2019, Judge Murray issued a Report and Recommendation ("R & R") recommending that the entire action be remanded to the Dallas County Circuit Court, as this

---

[4] Listed as Courts III – V in Plaintiffs' SAC.

[5] This Claim mirrors Plaintiffs' Loss of Consortium Claim as contained in their FAC. *See* n. 2.

Court lacked subject matter jurisdiction after Plaintiffs added the three non-diverse co-employee Defendants. (Doc. 30). The R & R was based on an analysis of 28 U.S.C. §1447(e) and authority from the Sixth Circuit. (*Id.*, pp. 5 – 9). Judge Murray found that the claims against the non-diverse Defendants did not arise under the Alabama Worker's Compensation Act, and therefore, that 28 U.S.C. §1445(c) did not prohibit their removal. Rather, as those claims had been properly removed, the joinder of non-diverse parties relative to those claims, after removal, divested the Court of diversity jurisdiction.

  A & G objected to Judge Murray's R & R, arguing that the claims brought against the substituted non-diverse co-employee Defendants arose under the Alabama's Worker's Compensation Act, were unremovable under 28 U.S.C. §1445(c), and were therefore due to be severed and remanded under *Lamar.* A & G argued that Ala. Code §25-5-53 displaced all common law actions against co-employees and created causes of action for "willful conduct" under Ala. Code 25-5-11(c)(2). A & G's position is that the Alabama Worker's Compensation Act provides the only means of redress Plaintiffs seek. Specifically, A & G noted the legislative and jurisprudential history of that statute. A & G contended that §25-5-53's dictate that "the rights and remedies granted in this chapter to an employee shall exclude all other rights and remedies of the employee . . . at common law, by statute, or otherwise on account of injury, loss of services, or death," combined with Ala. Code 25-5-11(d)(2)'s definition of "willful conduct," clearly indicate that Plaintiffs' co-employee claims arose under the Alabama Worker's Compensation statute. (Doc. 31, pp. 5- 9). This Court conducted a hearing at which Plaintiffs' counsel argued that Ala. Code §25-5-53 simply provided the statutory vehicle to assert co-employee "willful conduct" claims, and that such claims do not arise under Alabama's Worker's Compensation Act.

**DISCUSSION**

This Court agrees with Judge Murray's conclusion that the claims against A & G, Yale, and Globe were within the Court's subject matter jurisdiction at the time of removal. (Doc. 30, p. 4). All Plaintiffs were diverse from all named Defendants and the amount in controversy exceeded the threshold minimum. (*Id.*). The Court, though, finds it beneficial to conduct an independent analysis as to whether the co-employee claims arise under Alabama's Worker's Compensation Act.

I. ***Lamar v. The Home Depot***

As noted above, *Lamar* directs this Court to exercise jurisdiction over claims properly removed notwithstanding other claims which arise under a state worker's compensation statute and are therefore not removable. The combination of claims properly removed under 28 U.S.C. §1441(a) with claims that are not removable under 28 U.S.C. §1445(c) triggers the sever and remand procedure outlined in that case*. See Lamar,* 907 F. Supp. 2d at n. 3. Therefore, this Court must answer whether the claims brought against the substituted non-diverse Defendants arise under the Alabama Worker's Compensation Act.[6] If those claims do not arise under the Act,

---

[6] This Court notes several differences between this case and *Lamar.* In *Lamar*, the Court, sitting in removal jurisdiction based on diversity, was tasked with determining whether § 1445(c) required plaintiff's entire action to be remanded. *Lamar*, 907 F. Supp. 2d at 1312 (noting *Reed v. Heil Co.,* 206 F. 3d 1055 (11th Cir. 2000) as "the only published decision of the Eleventh Circuit known to have addressed the **scope of remand** under 28 U.S.C. §1445(c).") (Emphasis added). There, the parties agreed that plaintiff's breach of contract, fraud, and outrageous conduct claims did not arise under the Alabama Worker's Compensation Act. *Id*. Here, the parties contest the precise issue of whether claims arise under the Alabama Worker's Compensation Act. Also, unlike *Lamar*, the claims at issue here are specifically addressed by the Alabama Worker's Compensation Act. *See, e.g.,* Ala. Code §25-5-11(c)(2); Doc. 15, pp. 6 – 7. *Lamar* remains the law of the District; this case's factually dissimilar posture does not change that.

they were properly removed and the substitution of the non-diverse Defendants deprives this Court of diversity jurisdiction.

In his R & R, Judge Murray found that the claims against the substituted co-employees did not arise under the Alabama Worker's Compensation Act, relying on *Ala. Mun. Workers Comp. Fund, Inc. v. P.R. Diamond Prod., Inc.,* 234 F. Supp. 3d 1165 (N.D. Ala. 2017). (Doc. 31, p. 12). In *Diamond*, the plaintiff, Alabama Municipal Worker's Compensation Fund, Inc. ("AMWCF") brought an action against PR Diamond Products, Inc. ("Diamond") pursuant to Ala. Code §25-5-11(d). That provision gives an injured employee's employer or its insurance carrier six months to bring a tort action against a third party where the injured employee did not file a lawsuit against a third party within the applicable statute of limitations. *Id*. That court found the plaintiff's claims did not arise under the Alabama Worker's Compensation Act, relying, in part, on the Eleventh Circuit's decision in *Reed v. Heil Co.*, 206 F.3d 1055 (11th Cir. 2000):

> In *Reed v. Heil Co.*, the Eleventh Circuit held that a claim of retaliatory discharge, brought pursuant to Alabama Code § 25-5-11.1, arose under the Alabama Worker's Compensation Act for purposes of § 1445(c). The Court explained that the "retaliatory discharge cause of action **increases workers' willingness to file compensation claims, and it limits employers' ability to discourage them.** In so doing, § 25-5-11.1 encourages prompt and thorough medical attention for workplace injuries. *Id.* at 1060.
>
> [. . .]
>
> [A]ctions like the one brought by AMWCF have little effect on the **willingness of workers to bring claims**, **the ability of employers to discourage claims, or the availability of medical care in the workplace**. Thus, *Reed* provides no justification for treating AMWCF's claims as arising under Alabama's workmen's compensation laws. Instead, *Reed* suggests that tort claims, like AMWCF's, should be treated differently from retaliatory discharge claims that do arise under the workmen's compensation scheme. Generally, "[a] lawsuit arises under the law that creates the cause

7

> of action." *Am. Well Works v. Layne*, 241 U.S. 257, 36 S. Ct. 585, 60 L. Ed. 987 (1916). **AMWCF's claims of failure to warn, fraudulent representation, and breach of implied warranty were created by the laws of tort and contract**. (*See* Doc. 1-2, pp. 57-59). The Alabama Worker's Compensation Act is merely the statutory vehicle by which AMWCF is able to bring the action to court. Thus, § 25-5-11(d) of the Alabama Worker's Compensation Act "may regulate the prosecution of [AMWCF's] claims," but the action is ultimately one in tort and contract, and it does not arise under the Alabama Worker's Compensation Act for purposes of § 1445(c). *See Houston*, 597 F. Supp. at 991. Accordingly, § 1445(c) does not require remand in this case.

*P.R. Diamond Prods., Inc.,* 234 F. Supp. 3d at 1171-72 (emphasis added). In sum, the *Diamond* Court found that claims that concerned an underlying common law cause of action did not "arise under" Alabama's Worker's Compensation Act because those claims did not concern "the willingness of workers to bring claims, the ability of employers to discourage claims, or the availability of medical care in the workplace." *Id*. at 1172. Thus, the *Diamond* Court appeared to focus more on policy considerations and less on whether the Alabama Worker's Compensation Act **created** the cause of action that plaintiff pursued.

A & G contends – and is correct – that the nature of the claims now at issue and those in *Diamond* are dissimilar. Here, Plaintiffs are not an employer or an insurance carrier pursuing a claim on behalf of an injured employee who failed to do so during the statute of limitations period, as contemplated in Ala. Code §25-5-11(d). Plaintiffs nevertheless argue that these co-employee claims do not arise under the Act because they are creatures of common law. This Court agrees with Plaintiffs for the reasons set out below.

## II. Arising Under Ala. Code §25-5-11(d)

A & G's argument that the Alabama Worker's Compensation Act appears to create a cause of action for willful conduct is plausible, but ultimately unpersuasive. While not directly

8

addressed by either party, the Court must examine – in greater detail – the jurisprudential history of claims of this particular nature and the various iterations of Alabama worker's compensation laws to determine whether these claims are creatures of the Act.

Alabama's first semblance of worker's compensation legislation, the Alabama Employer's Liability Act (or "AELA"), was enacted in 1886. Prior to the enactment of that (and subsequent) legislation, employees

> . . . found themselves in one of three situations: they **had to prove that their injury was the fault of their employer via a tort claim**, they were at the mercy of their employer's benevolence in caring for them beyond what the law required, or their families became stigmatized with poverty. The tort system was laden with so many obstacles that injured workers experienced extremely poor success in obtaining any recovery.

1 ALABAMA WORKERS COMPENSATION LAW AND HANDBOOK § 1.01 (emphasis added). These common law causes of action were difficult to sustain. Before workers compensation statutes, cases were frequently dismissed or overturned on appeal as workers (or their estates) confronted substantial impediments to tort recovery.[7] Recovery by injured employees (and the families of deceased

---

[7] *See, e.g., Mobile & O. R. R. Co. v. Thomas*, 42 Ala. 672 (1868); *Mobile & M. R. Co*. v. *Smith*, 59 Ala. 245 * 253, 1877 Ala. LEXIS 85 (Ala. December 1, 1877) (reversing lower court's judgment where the following requested jury instruction was not given: "If the jury believe [sic] the evidence before them, on the subject of the nature of the employment of the plaintiff, Mitchell, O'Brien and Price by the defendants, that they were all servants of the corporation, that the plaintiff cannot recover for any act of negligence either of omission or commission of either, or all, or any one or more of them, if it appears from the evidence that, in employing and retaining them in employment, the defendant took due and proper care to select and return prudent and competent men for the several employments in which they were respectively engaged."); *Id.* (". . . as between their employers and themselves, employees take the risk of any damage they may sustain from the perils incidental to the service in which they engage including those arising from the negligence of others engaged therein, unless they are chargeable upon the misconduct or negligence of the employer."); *Smoot v. Mobile & M. R. Co.*, 67 Ala. 13 (1880) (refusing to impose liability upon the employer for supervisor's negligence where supervisor ordered the employee to couple train cars together and employee knew that the cars were ill-paired, resulting in

9

employees) was made more difficult by assumption of the risk, contributory negligence, and the fellow servant doctrine defenses. While the fellow servant doctrine shielded **employers** from most common law **negligence** actions where a co-employee's negligence caused the underlying injury, contributory negligence and assumption of the risk made it difficult for injured workers to carry causes of action against an employer and co-employees. 1 ALABAMA WORKERS COMPENSATION LAW AND HANDBOOK § 1.01.

This Court found that the overwhelming majority of cases dealing with employees' common law rights in Alabama[8] concerned those actions where an employee filed suit against an employer on the theory that the employer was negligent in hiring the co-employee accused of causing the injuries at issue.[9] In a majority of cases, the common law was silent as to whether an employee had a common law right of action against a **co-employee** for injuries resulting from a co-employee's "willful conduct." However, this Court found two Alabama cases that deal with whether a servant (employee) could be held liable, generally, for his willful conduct during the course of his work. In a case concerning an employee's actions that caused a steamboat accident, the Alabama Supreme Court stated:

> That **for the acts of the agent**, or servant, **willfully and intentionally done,** without the command or authorization of the

---

employee's injuries: "An employee cannot recover for an injury occurring by the negligence of his co-employee . . . It is, however, the negligence of the master, for which liability to a servant can be visited upon him, for the rule is settled, that he cannot be made liable for injuries proceeding from other servants in the same employment. Injuries, resulting from such cause, are of the risks incident to the employment, which it is intended the servant contemplates, and consents to incur, when he enters the service.").

[8] Prior to 1886.

[9] *See, e.g., Smoot*, 67 Ala. at 17 (articulating an employee's assumption of risk at his place of employment.)

> master, **the servant is liable, and the master is not.** [. . .] It seems to be well settled that if the servant be in the performance of a duty entrusted to him, and, from a want of either skill or diligence, injure another, it will not excuse the master or employer, even if the servant, in the matter complained of, was acting contrary to instructions. Trusting the servant in the given case, is an assumption by the master of all responsibility which results from negligence or want of skill in the servant. But this rule does not apply, **when the servant actually wills and intends the injury, or steps aside from the purpose of the agency committed to him, and inflicts and independent wrong.**

*Cox, Brainard & Co. v. Keahey*, 36 Ala. 340, 343-44 (1860) (emphasis added). Similarly, in an action concerning an employee's trespass in 1853, the Court noted:

> According to this principle, a master is not liable in trespass *vi et armis* for **injuries done by his servant, which are willful [*sic*] on the part of the servant**, and of which the master is ignorant, although done in the course of the master's business. If injuries are done by the servant in the course of the master's business, which result from negligence or want of proper care or skill on the part of the servant, the master will be liable, it is true, but only in an action on the case; for there the gist of the action is the negligence of the servant, and for that the master is lawfully liable, although **not for the willful [*sic*] torts of his servant**.

*Lindsay v. Griffin*, 22 Ala. 629, 630 (1853) (emphasis added). Taken together, *Cox* and *Lindsay* appear to contemplate that an employee could be held liable – at common law – for his willful conduct while in the service of his employer. In other words, employee liability for willful conduct certainly arose under the common law. Accordingly, there is some precedent to imply that the common law allowed an action by an employee against a co-employee for injuries that resulted from a co-employee's willful acts in the course of employment.[10] The Court now turns to the question of whether the Alabama Worker's Compensation Act abrogated that common law.

---

[10] The Court notes that these cases do not speak to the exact proposition that an employee could hold a co-employee liable for willful conduct. However, the cases' rule that an employee could

11

As noted in *Diamond*, "[a] lawsuit arises under the law that creates the cause of action." *P.R. Diamond Prods., Inc.*, 234 F. Supp. 3d at 1172. There is no question that the Alabama Worker's Compensation Act allows for causes of action against co-employees. In relevant part, the provision giving such permission states the following:

> If the injury or death for which compensation is payable under Articles 3 or 4 of this chapter **was caused under circumstances also creating a legal liability for damages** on the part of any party other than the employer, . . . the employee, or his or her dependents in case of death, . . . may bring an action against the other party to recover damages for the injury or death, and the amount of the damages shall be ascertained and determined without regard to this chapter. If a party . . . is an officer, director, agent, or employee of the same employer, or his or her personal representative, the injured employee, or his or her dependents in the case of death, may bring an action against any . . . person, or his or her personal representative, **only for willful conduct** which results in or proximately causes the injury or death.

---

be held liable for his tortious willful conduct against other appears generally applicable co-employee actions.

For instance, in 1939, following an amendment to Alabama's Workers' Compensation Act, the State Legislature authorized legal proceedings "against any third party other than the employer to recover damages notwithstanding the payment by the employer or his liability to pay compensation." 1 ALABAMA WORKERS COMPENSATION LAW AND HANDBOOK § 2.03. This was later interpreted by the Alabama Supreme Court to mean, "[t]he liability of a third party is that at common law, the act not taking away the common-law rights of recovery against such third party but continuing existing rights and remedies." *Harris v. Louisville & N. R. Co.,* 237 Ala. 366, 368, 186 So. 771, 771 (1939). From this passage, it is clear that the Legislature's authorization was not granting new remedies meant to displace old ones. Instead, the amendment preserved and limited those available at common law. This trend can be seen through further amendments made in 1961 and 1985. 1 ALABAMA WORKERS COMPENSATION LAW AND HANDBOOK §§ 2.03, 2.10; *United States Fire Ins. Co. v. McCormick*, 286 Ala. 531, 536, 243 So. 2d 367, 371 (1970) (finding "where there is no expressed legislative mandate to the contrary, that a co-employee or fellow servant is a third party tortfeasor within the meaning of the Workmen's Compensation Act.") (superseded by statute as stated in *Reed v. Brunson*, 527 So. 2d 102, 1988 Ala. LEXIS 60).

Code of Ala. § 25-5-11(a) (emphasis added). Excerpts in this section indicate that the Act does not create the claims Plaintiffs pursue against the co-employee Defendants. The phrase, "if the injury or death . . . **was caused under circumstances also creating legal liability** for damages . . .," implies that this legal liability was not created by the statute. In fact, this excerpt suggests the opposite – that the liability existed under other circumstances prior to the Act. The Court cannot reconcile the plain text of the statute with the proposition that the Act creates this cause of action.

A & G insists, though, that additional provisions in the Act require this Court find otherwise. A & G argues that §§25-5-11 (a), (b), and (c), in conjunction, provide that common law co-employee actions were abolished and re-constituted by the Act. (Doc. 31, p. 11). In §§25-5-11(b) and (c)(2), the Legislature defined "willful conduct" the following way:

> (b) If personal injury or death to any employee results from the willful conduct, as defined in subsection (c) herein, of any . . . employee of the same employer . . . the employee shall have a cause of action against the person . . .
>
> (c) As used herein, "willful conduct" means any of the following:
>
> [. . .]
>
> (2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.

A & G's argument does not prevail. The Supreme Court of Alabama has found that "the legislature **limits** employee's claims for damages, where workmen's compensation benefits are payable . . ." *Reed v. Brunson,* 527 So. 2d 102, 113 (Ala. 1988) (emphasis added); *see also, Layne v. Carr,* 631 So. 2d 978, 982 (Ala. 1994) ("The legislature **expressly limited** exceptions to the exclusivity of the workers' compensation scheme.") (Emphasis added).[11] In both cases, the Court found that the State Legislature did not usurp or eradicate the common law as it pertained to an employee's willful conduct. In fact, the Legislature merely preserved and limited, rather than abrogated and re-constituted, employee liability for willful conduct that was previously available at common law. As such, this appears to be a case contemplated by other districts, wherein the claims are found only to "relate" to Alabama's Worker's Compensation Act.[12]

---

[11] Further still, the issue in *Reed* did not deal squarely with the issue of whether "willful conduct" actions arose under the Alabama Worker's Compensation Act. Instead, that court was tasked with determining, "whether the Legislature has the power to eliminate co-employee suits grounded in negligence or wantonness." *Reed*, 527 So. 2d at 116 (Ala. 1988).

[12] As stated above, the standard for determining whether a claim arises under a law concerns whether the Act created the cause of action. These provisions, read together, tend to show that the Act merely preserves and limits the types of actions available against co-employees, as opposed to completely displacing the common law. As noted in other cases,

> While the Eleventh Circuit has not interpreted the language "arising under the workmen's compensation laws" in §1445, other courts have found that language to mean the same as "arising under" does in 28 U.S.C. §1331. [. . .]
> In the Eleventh Circuit, "arising under" for purposes of §1331, means the law creates the cause of action, or a substantial disputed issue of the law is a necessary element of the claim. *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). Applying that standard to §1445(c), the court explained in *Payne* that a statute can arise under workers' compensation laws if the workers' compensation law **creates a cause of action that usurps a traditional common law action or if the statute operates as a necessary element to a tort**

Therefore, after careful review, this Court finds these claims do not arise under Alabama's Worker's Compensation Act. The Act is the statutory vehicle by which a plaintiff can pursue claims against co-employees.[13]

---

> **claim**. *Payne*, 154 F. Supp. 3d at 1315; *see also Alabama Home Builders Ins. Fund*, 2012 U.S. Dist. LEXIS 84907, 2012 WL 2359402 at *3. **If, on the other hand, the duty owed is a general duty that can apply in a "broad spectrum of relationships," the claims are only related to the workers' compensation statutes and do not arise under them**. *Patin v Allied Signal, Inc.*, 77 F.3d 782, 788 (5th Cir. 1996); *see also Moore v. CNA Foundation*, 472 F. Supp. 2d 1327, 1331 n.* (M.D. Ala. 2007). **If the facts involved in a workers' compensation claim and a tort claim are the same, that merely means that the tort claims are "related to," not arising under, workers' compensation law.** *Sasser v. Ryder Truck Rental*, No. 2:06cv593-CSC, 2008 U.S. Dist. LEXIS 160, 2008 WL 45736, at *6 (M.D. Ala. Jan. 2, 2008).

*Steube v. Virco Inc.,* No. 2:16cv1008-WHA, 2017 U.S. Dist. LEXIS 17652, at *5-6 (M.D. Ala. Feb. 8, 2017) (emphasis added).

[13] Though this appears to be a matter of first impression, as noted in Judge Murray's R & R (Doc. 30, p. 12), at least one court in this Circuit treated co-employee claims concerning willful conduct as "arising under" Alabama's Worker's Compensation Act. However, it seems these claims were categorized and pursued as such because neither party contested the issue of whether those claims "arose under" Alabama's Worker's Compensation Act. *See Treadwell v. Dow-United Techs.*, 970 F. Supp. 974 *, 1997 U.S. Dist. LEXIS 9588, 47 Fed. R. Evid. Serv. (Callaghan) 708 (M.D. Ala. March 21, 1997):

> Although the Alabama Workers' Compensation Act generally provides immunity to the employer, its compensation carrier, and its officers, directors, agents, servants, and employees, Alabama Code § 25-5-11(b)(1993) grants workers' compensation claimants a civil cause of action for injuries resulting from the "willful conduct" of their co-employees. See *Reed v. Brunson*, 527 So. 2d 102, 108 (Ala. 1988). [. . .] Section 25-5-11(c)(2) defines willful conduct as a "purpose or intent or design to injure another." In pursuing such a claim, "plaintiff need not show that the co-employee defendant specifically intended to injury the person who was injured."

### III. 28 U.S.C. §1447(e) and Remand

As the co-employee claims do not arise under the Alabama Worker's Compensation Act, the Court must next determine whether it has jurisdiction over the case following the addition of non-diverse defendants. Section 1447(e) provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." As Plaintiffs substituted three non-diverse co-employees for Fictitious Defendants 'A,' 'B,' and 'C' following removal, 1447(e)'s framework applies. Further, as noted in Judge Murray's R & R, the Court is encouraged to undertake a §1447(e) analysis regardless of whether the amendments were made as a matter of course, as Plaintiffs' were here. For the reasons articulated in Judge Murray's R & R, this Court agrees that the entire action is due to be remanded based on the analysis of the four factors outlined in the R & R. (*Id.* at pp. 8 – 11).

### IV. Conclusion

Because Plaintiffs' co-employee claims do not arise under the Alabama Workers' Compensation Act, and complete diversity was destroyed following the joinder of three non-diverse co-employee Defendants after removal, this Court **REMANDS** this entire action to the Dallas County Circuit Court.

---

*See also, Musgrove v. Kellogg Brown & Root, LLC*, 2013 U.S. Dist. LEXIS 61161 \*, 2013 WL 1827583 (S.D. Ala. April 29, 2013) ("Because the plaintiff argues that his claims arise from violations of the workers' compensation law, the Court concludes that he makes no argument these claims arise under those laws, as Section 1445(c) requires. Were he to make such an argument, it would fail.").

DONE and ORDERED this 20th day of June, 2019.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE